```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

GENEO BROWN,

                                                **No. 09-CV-1056(MAT)**

                    Petitioner,       **DECISION AND ORDER**

    -vs-

ATTORNEY GENERAL of NYS;
BRIAN FISHER, Commissioner,

                    Respondents.

**I.   Introduction**

Geneo Brown ("Brown" or "Petitioner") brings this timely pro se habeas corpus Petition pursuant to 28 U.S.C. § 2254 seeking review of a December 28, 2007 determination by the Time Allowance Committee ("the TAC") of the Southport Correctional Facility to withhold his good time allowance credits. Petitioner does not dispute his underlying convictions.

Petitioner asserts the following grounds for habeas relief, all of which have been properly exhausted in State court: (1) he was denied adequate legal assistance at the TAC hearing, because his assistant refused to investigate his case or to retrieve relevant documents relating to Petitioner's prior disciplinary hearings and "mental health" records; (2) Petitioner's "continuous[] involuntary psychiatric treatment, transfers, and confinements placed an 'atypical and significant' hardship on Petitioner's confinement in relation to his original sentence"; (3) Petitioner's repeated psychiatric treatments, transfers, and

confinements were in retaliation for, among other things, Petitioner's filing of grievances and lawsuits, and thus violated his First Amendment rights;(4) the admission into evidence at the TAC hearing of Petitioner's repeated involuntary psychiatric transfers and treatment constituted an "illegal search and seizure" in violation of the Fourth Amendment, and the TAC improperly used this "erroneous information" in rendering its decision; and (5) Petitioner's receipt of allegedly unnecessary psychiatric treatment constituted cruel and unusual punishment in violation of the Eighth Amendment.

Respondent argues that none of Petitioner's claims present constitutional question cognizable on Federal habeas review and that, in any event, none of them have merit.

For the reasons that follow, the petition is dismissed.

**II. Discussion**

  **A. New York State Law Governing "Good Time" Credits**

A New York State inmate serving an indeterminate sentence with a maximum term other than life imprisonment may receive an allowance for good behavior in prison not to exceed one-third of the maximum term. See N.Y. CORR. LAW § 803(1). Good time credits "may be granted for good behavior and efficient and willing performance of duties assigned or progress and achievement in an assigned treatment program," and "may be withheld, forfeited or canceled in whole or in part for bad behavior, and violation of institutional

rules or failure to perform properly in the duties or program assigned." Id.; see also N.Y. COMP. R. & REGS., tit. 7, § 260.1(c). Once an inmate is granted good time credits equal to the remainder of his sentence, he is conditionally released and placed under supervision by the New York State Division of Parole until the expiration of his sentence. See N.Y. PENAL LAW § 70.40(1)(b).

Recommendations by the TAC are to be distinguished from "Tier III disciplinary hearings, also known as "[s]uperintendent's hearings, [which] are used for the review of the most serious violations of institutional rules." Walker v. Bates, 23 F.3d 652, 654 (2d Cir. 1994). The key distinction between a TAC recommendation and a Tier III Superintendent's hearing is that the TAC recommendation is not punitive. Matter of Amato v. Ward, 41 N.Y.2d 469, 473 (1977) ("The function of the time allowance committee . . . is not the investigation and punishment of particular acts of misconduct, charged or uncharged. Instead the time allowance committee evaluates the inmate's prison record and recommends the amount of good behavior allowance to be granted not as a punitive sanction but as a standard measuring the progress, capacity, efforts, and achievement by the prisoner during his stay in prison . . . .") (citation omitted).

New York law clearly provides that good time credits are a privilege, not a right. Determinations regarding their grant or denial rest in the sound discretion of prison authorities. E.g.,

Matter of Edwards v. Goord, 26 A.D.3d 659, 660 (N.Y. App. Div. 3d Dept. 2006) ("The determination to withhold a good time allowance is discretionary in nature and, as long as it is made in accordance with the law, it will not be subject to judicial review."); see also N.Y. CORR. LAW § 803(4) ("No person shall have the right to demand or require [good behavior allowances]. The decision of the commissioner of correctional services as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law."); N.Y. COMP. R. & REGS., tit. 7, § 260.2 ("Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him.").

**B.   Analysis of Petitioner's Due Process Claims**

Claims One and Four pertain to an alleged denial of due process in connection with Petitioner's good time credit determinations–i.e., that he did not receive adequate legal assistance and that certain information was improperly admitted into evidence and considered by the TAC.

"In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001) (alteration and internal quotation marks omitted). The Supreme Court has held that a prisoner does possess

a protected liberty interest in an award of good time credits when the applicable state statutory scheme provides that credits, once awarded, may only be revoked under specific circumstances. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556-58 (1974); <u>see also</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995) (reaffirming the correctness of <u>Wolff</u>'s holding). In such a case, the prisoner is entitled to a hearing that meets certain minimum due process requirements before the good time credits may be revoked. <u>Wolff</u>, 418 U.S. at 557-58, 563-72.

However, the TAC is not charged with the revocation of previously awarded good time credits, <u>Amato</u>, 41 N.Y.2d at 473, as was the case in <u>Wolff</u>. Rather, the TAC recommends whether good time credits should be awarded, based upon the inmate's entire record. <u>Id.</u> Moreover, the TAC's "initial decision as to the award of good time credits [is] discretionary," and the prisoner has "no entitlement to receive any such credits." <u>Edwards v. Goord</u>, No. 08-4107-pr, 362 Fed. Appx. 195, 197, 2010 WL 292749, at *2 (2d Cir. Jan. 26, 2010).

The TAC's determination is thus similar to the discretionary granting of parole. Prisoners do not have a protected liberty interest in being released on parole where the relevant statutory scheme endows prison authorities with discretion over the decision. <u>E.g.</u>, <u>Greenholtz v. Inmates of the Neb. Penal and Corr. Complex</u>, 442 U.S. 1, 9-11 (1979); <u>Barna v. Travis</u>, 239 F.3d 169, 170-71

(2d Cir. 2001). Similarly, the TAC's "granting or withholding of good time is a discretionary matter subject to the prisoner meeting and maintaining the requirements for eligibility." Edwards v. Ladlair, 07 Civ. 00059, 2008 WL 3156214, at *4 (N.D.N.Y. Aug. 4, 2008), aff'd sub nom. Edwards v. Goord, 2010 WL 292749 (2d Cir. Jan. 26, 2010). Like the New York parole scheme, the wholly discretionary good time allowance scheme does not 'create a legitimate expectancy' of obtaining an earlier release." Edwards, 2008 WL 3156214, at *4(quoting Barna, 238 F.3d at 171) (holding that the New York parole scheme "is not one that creates in any prisoner a legitimate expectancy of release," meaning that New York prisoners "have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable). Accordingly, Petitioner's claims in this case relating to the TAC's award of good time credits do not implicate a constitutionally protected liberty interest and therefore are not cognizable on Federal habeas review.

Even if the Court were to consider the merits of Petitioner's due process claim, he would not prevail. New York's statutory scheme for awarding and withholding good time allowance credits provides the inmate with the following procedures: a review of the inmate's file by the TAC, a personal interview by the TAC, and a statement of the TAC's reasons for denying good time credits. N.Y. COMP. CODE R. & REGS., tit. 7, §§ 261.3, 261.4.  This Court agrees

with the other district courts in this Circuit holding that these procedures meet the requirements of due process. Edwards v. Ladlair, 2008 WL 3156214, at *4 (citing Greenholtz, 442 U.S. at 15) (where statute created a liberty interest in parole, the Federal Constitution did not require more due process than an opportunity to be heard, and a statement informing the inmate in what respects he fell short of qualifying for parole).

Moreover, Brown's specific claims are entirely without merit. First, he asserts that he was denied adequate assistance at the TAC hearing, because his legal assistant allegedly refused to investigate his case or to retrieve relevant documents relating to Petitioner's prior disciplinary hearings and "mental health" records. See Petition ("Pet.") ¶ 22(A). However, the "Assistance Form" indicates that Petitioner did not request the legal assistant to obtain any documents. See Respondent's Exhibit C. Although Petitioner refused to sign the Assistance Form, he did not indicate that he was dissatisfied with the assistance offered. Id. Moreover, as the Appellate Division found "even had [petitioner] demonstrated the [assistant's] requisite inadequacy, he failed to show the necessary prejudice in light of the evidence of his copious disciplinary infractions and failure to complete the

necessary programs." Brown v. Napoli, 62 A.D.3d 1106, 1107 (N.Y. App. Div. 3d Dept. 2009) (citations omitted).[1]

Petitioner also claims that the TAC violated his Fourth Amendment right to be free from unreasonable searches and seizures by admitting evidence of his repeated involuntary psychiatric transfers and treatment, and that the TAC improperly used this "erroneous information" in rendering its decision. See Pet. ¶ 22(C). However, as Respondent points out, the TAC was expressly required to "consider [Petitioner's] entire file," N.Y. COMP. CODE R. & REGS., tit. 7, § 261.3(a), which necessarily would include his record of psychiatric treatment.

Liberally construed, Petitioner's pleadings appear to state, as their primary complaint, that the TAC failed to marshal additional evidence and redetermine the correctness of Petitioner's prior disciplinary proceedings. However, "[t]he correctness of an underlying superintendent's [disciplinary] proceeding . . . is not an issue with which the time allowance committee is concerned." People ex rel. Jelich v. Smith, 105 A.D.2d 1125, 1126 (N.Y. App. Div. 4th Dept. 1984); accord Amato, 41 N.Y.2d at 473. Thus, Brown has not set forth an error of New York State law, much less an error of Federal constitutional magnitude.

---

[1] This order was issued as part of Brown's efforts to exhaust his State remedies. The Appellate Division affirmed the Chemung County Supreme Court's denial of Brown's Article 78 proceeding challenging the TAC's withholding of good time credits. The New York Court of Appeals subsequently denied leave to appeal the Appellate Division's decision.

To the extent that Brown alleges errors of state law, they are beyond the purview of this Court in deciding a petition for Federal habeas corpus relief. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted).

### C. Analysis of Petitioner's Remaining Claims

Respondent argues that Claims Two, Three, and Five are not cognizable in a Federal habeas proceeding because they "challeng[e] the conditions of [Petitioner's] confinement rather than the fact or length of custody." Wolff v. McDonnell, 418 U.S. at 554. Specifically, these three claims relate solely to what Petitioner describes as his continuous and involuntary psychiatric treatment, transfers, and confinements.

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). On the other hand, "a [42 U.S.C.] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact

or length of his custody." Id.; accord, e.g., Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006); Abdul-Hakeem v. Koehler, 910 F.2d 66, 69 (2d Cir. 1990).

The Supreme Court has identified the following as atypical and significant hardships of prison life: "a prisoner . . . be[ing] transferred involuntarily to a state mental hospital for treatment of a mental disease . . . [and] the involuntary administration of psychotropic drugs." Sandin v. Conner, 515 U.S. 472, 479 n. 4 (1995); see also Gonzalez v. Lempke, 09 Civ. 6423, 2010 WL 276731, at *1 n.1 (W.D.N.Y. Jan. 20, 2010) ("Petitioner raises three other grounds, but all concern conditions of confinement, thus, are not cognizable under 28 U.S.C. § 2254. Thus, Petitioner's Ground two, that he was denied access to his legal papers and unlawfully confined in a psychiatric center, . . . , are claims not properly considered in a petition for a writ of habeas corpus, but might for the basis for a civil rights lawsuit.") (internal and other citations omitted).

In his Traverse, Brown disputes Respondent's characterization of his claims as relating to the conditions of his confinement and insists that they are properly presented in a habeas petition. For instance, Brown asserts that his case is distinguishable from Gonzalez, 2010 WL 276731, at *1 n.1, because he "is not challenging the psychiatric treatment," but is instead challenging the TAC's failure to consider Petitioner's 'entire institutional record'

which includes his mental health records and [Office of Mental Health] testimony at several disciplinary hearings." Traverse ("Trav.") at 5.

Based upon Brown's allegations and argument in his Traverse-specifically, that he is <u>not</u> challenging the psychiatric treatment he received–the Court finds that he has abandoned the claims asserted in his Petition ("Pet."), which this Court has denominated Claims Two, Three, and Five. Those claims allege, as noted above, that Petitioner's "continuous[] involuntary psychiatric treatment, transfers, and confinements placed an 'atypical and significant' hardship on Petitioner's confinement in relation to his original sentence" (Pet. ¶ 22(A)); his repeated psychiatric treatments, transfers, and confinements were in retaliation for, among other things, Petitioner's filing of grievances and lawsuits, and thus violated his First Amendment rights (Pet. ¶ 22(B)); and his allegedly unnecessary psychiatric treatment constituted cruel and unusual punishment in violation of the Eighth Amendment(Pet. ¶ 22(D)).

With regard to his psychiatric treatment, Brown now argues in his Traverse that the TAC failed to consider his "'entire institutional record' which includes his mental health records and [Office of Mental Health] testimony at several disciplinary hearings," Trav. at 5. This argument, that the TAC improperly excluded evidence, is at odds with Brown's contention in Claim Four

(Pet. ¶ 22(C)) that the TAC violated his Fourth Amendment rights by <u>admitting</u> evidence of his repeated involuntary psychiatric transfers and treatment, and that the TAC improperly used this "erroneous information" in rendering its decision.

Brown's allegations essentially claim that the TAC made an incorrect decision. However, the correctness of the TAC's decision to withhold a good time allowance is essentially beyond judicial review by the New York State courts. See <u>Matter of Edwards</u>, 26 A.D.3d at 660 ("The determination to withhold a good time allowance is discretionary in nature and, as long as it is made in accordance with the law, it will not be subject to judicial review."). The TAC's granting or withholding of good time is a wholly discretionary matter subject to the prisoner meeting and maintaining the requirements for eligibility, and does not create a legitimate expectancy of obtaining an earlier release so as to trigger due process protections. Even if there was a cognizable liberty interest at stake, the correctness of the TAC's decision is not a matter within a habeas court's purview. See <u>Swarthout v. Cooke</u>, 131 S. Ct. 859, 863 (2011) (<u>per</u> <u>curiam</u>) (reversing habeas relief granted to prisoner denied parole under California's parole scheme, which has been held by California's State courts to create a due process liberty interest under State law; "[t]he Ninth Circuit's questionable finding that there was no evidence in the record supporting the parole denials is irrelevant unless there is

a federal right at stake, as § 2254(a) requires" and "[t]he short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts . . . .").

**IV. Conclusion**

For the reasons stated above, Geneo Brown's request for writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal in forma pauperis.

**SO ORDERED.**

S/Michael A. Telesca

_____
**MICHAEL A. TELESCA**
**United States District Judge**

**DATED:   June 15, 2011**
**Rochester, New** York